IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT AT MEMPHIS

---

LLOYD'S ACCEPTANCE CORP.; BARRY COHEN, individually;
21st CENTURY COMMUNITIES, INC.;
HIGHLAND CREEK ACQUISITION, LLC and
FOREST CREEK TOWNHOMES, L.L.C

     Plaintiffs,

vs.

CARROLL PROPERTY
MANAGEMENT, LLC;
HEDIGER ENTERPRISES, INC.;
and CARROLL ORGANIZATION, LLC

     Defendants.

No.
JURY DEMANDED

---

## COMPLAINT FOR BREACH OF CONTRACT AND OTHER RELIEF

---

COMES NOW Plaintiffs Lloyd's Acceptance Corp., Barry Cohen, individually, 21ST Century Communities, Inc., Highland Creek Acquisition, LLC and Forest Creek Townhomes, L.L.C (collectively "Plaintiffs" unless specified), by and through counsel, and for their Complaint against Defendants Carroll Property Management, LLC ("Carroll Property"), Hediger Enterprises, Inc. ("Hediger"), and Carroll Organization, LLC, ("Carroll Organization"), would respectfully show and state as follows:

### PARTIES and JURISDICTION

1.     Lloyd's Acceptance Corp. ("Lloyd's") is a Nevada corporation with its principal place of business located in Clark County, Nevada.

2.     Barry Cohen is an adult resident citizen of Clark County, Nevada.

1

3.     21st Century Communities, Inc. ("21st Century") is a Nevada corporation with its principal place of business located in Clark County, Nevada.

4.     Highland Creek Acquisition, LLC ("Highland Creek") is a Tennessee limited liability company with its principal place of business located in Clark County, Nevada. The one member of Highland Creek resides in Clark County, Nevada.

5.     Forest Creek Townhomes, L.L.C ("Forest Creek") is a Tennessee limited liability company with its principal place of business located in Clark County, Nevada. The one member of Forest Creek resides in Clark County, Nevada.

6.     Carroll Property is a Georgia limited liability company authorized to transact business in the state of Tennessee, with its principal place of business located at 3340 Peachtree Road NE in Atlanta, Georgia. Upon information and belief, the members of Carroll Property are residents of the states of Georgia and/or South Carolina.

7.     Hediger is a South Carolina corporation that is presently not authorized to transact business in the state of Tennessee. Hediger's principal place of business is located at 3340 Peachtree Road NE in Atlanta, Georgia.

8.     Carroll Organization is a Georgia limited liability company with its principal place of business located at 3340 Peachtree Road NE in Atlanta, Georgia. Upon information and belief, Carroll Organization currently does or has transacted business in the state of Tennessee as Carroll Management Group, Inc., Carroll Organization, Inc., Carroll Property Management, LLC and Hediger Enterprises, Inc.

9.     Jurisdiction and venue in this court are proper pursuant to the relevant provisions of 28 U.S.C § 1332 and 28 U.S.C § 1391, respectively.

## FACTUAL BACKGROUND

2

10.     On July 10, 2007, MPI Coventry Village, LLC and Miles Properties, Inc. entered into an Asset Management Agreement (the "Management Agreement") regarding certain real property and improvements, including an apartment complex, located at 1305 Turkey Run Lane, Memphis, Tennessee ("Property"). A copy of said Management Agreement is attached hereto as **Exhibit A** and incorporated herein by reference. Among other things, Miles Properties, Inc. agreed to provide certain commercial property management services to the owner of the Property, MPI Coventry Village, LLC, pursuant to the terms and conditions of the Management Agreement.

11.     In or around May, 2010, Carroll Property and/or Carroll Organization acquired Hediger.

12.     On September 17, 2010, Carroll Property and/or Carroll Organization entered into an "Asset Purchase Agreement" with Miles Properties, Inc. whereby Carroll Property and/or Carroll Organization acquired the interest, obligations and duties of Miles Properties, Inc. in connection with multiple property management service contracts, including the Management Agreement between MPI Coventry Village, LLC and Miles Properties, Inc.

13.     The Asset Purchase Agreement was authorized and approved by a court order in connection with bankruptcy proceedings involving Miles Properties, Inc., which expressly provided that management services contracts, including the Management Agreement, were assignable.

14.     Carroll Property and/or Carroll Organization assigned its rights in the Management Agreement to Hediger, and Hediger subsequently managed the Property from approximately September, 2010 to September, 2011.

15.     On or about January 27, 2011, Barry Cohen traveled to Memphis, Tennessee for the purpose of, among other things, inspecting the Property to determine whether to make an offer to purchase the Property.

16.     At the inspection of the Property on January 27, 2011, Cohen, individually and in his capacity as owner of the stock of Lloyd's and 21st Century, met with agents, representatives and/or agents of Carroll Property, Hediger, and/or Carroll Organization, and including but not limited to Jonathan Wogan and Arlene Elliott, regarding among other things, the condition of the Property and apartment units located thereon.

17.     When Cohen inspected the Property and certain apartment units located thereon, at least 165 units were boarded up and otherwise not accessible for inspection.

18.     Wogan and/or Elliott represented to Cohen that there was no mold in any of the apartment units at the Property.  See Correspondence dated January 30, 2011 from 21st Century regarding said inspection and representations, a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.

19.     Wogan and/or Elliott knew at the time of those representations that Cohen and/or 21st Century was inspecting the Property for the purpose of potentially making an offer to purchase the Property through one kind of business entity or another with which Cohen was affiliated.

20.     Based on Cohen's inspection of the Property, and in reliance upon the representations of the agents, representatives and/or agents of Carroll Property, Hediger and Carroll Organization described above, Cohen decided that one of his entities would pursue making an offer to purchase the Property.

21.     On or about September 27, 2011, Highland Creek purchased the Property from MPI Coventry, LLC.  In reliance upon the representations of Carroll Property, Hediger and/or Carroll Organization's agents, Wogan and/or Elliott, that there was no mold in any of the apartment units at the Property, Cohen caused Lloyd's to loan Highland Creek the funds necessary to purchase the Property.  Lloyd's held a first mortgage security interest against the Property.

22.     On or about September 27, 2011, MPI Coventry Village, LLC executed a "Quitclaim Assignment and Assumption Agreement," whereby MPI Coventry Village, LLC assigned, among other things, its right, title, and interests in the Management Agreement to Highland Creek. A copy of said Quitclaim Assignment and Assumption Agreement is attached hereto as **Exhibit C** and incorporated herein by reference.

23.     At the time of the purchase of the Property by Highland Creek, there were numerous creditors of MPI Coventry, LLC that had asserted, or threatened to assert, third party claims against MPI Coventry, LLC and/or the Property.

24.     Because MPI Coventry, LLC was only able to provide a quitclaim transfer of the Property to Highland Creek, and in order to obtain a clear title to the Property, Lloyd's declared a default and conducted a foreclosure sale on or about November 16, 2011.  Lloyd's was the highest and best bidder at said foreclosure sale.

25.     On or about November 25, 2011, Lloyd's assigned its interest in the foreclosure sale bid to Forest Creek.  See "Assignment of Memorandum of Bid," a copy of which is attached hereto as **Exhibit D** and incorporated herein by reference.

26.     On or about May 7, 2014, Highland Creek, Lloyd's, and Forest Creek executed an "Absolute Assignment" memorializing the sale, foreclosure and other transactions described in

the preceding paragraphs, and assigning all contract rights, including those under the Management Agreement, to Forest Creek. See Absolute Assignment, a copy of which is attached hereto as **Exhibit E** and incorporated herein by reference.

27.     At all times pertinent hereto, Cohen was an agent and/or representative, and otherwise had the actual authority to act on behalf of 21st Century, Highland Creek, Lloyd's and Forest Creek with respect to the inspection, purchase and sale of the Property as described above.

28.     Between September 27, 2011 and October 28, 2011, Carroll Property, Hediger, and/or Carroll Organization communicated directly with Cohen, and solicited, requested and otherwise offered to continue providing management services to the entity that now owned the Property.

29.     Pursuant to the Management Agreement, Carroll Property, Hediger, and/or Carroll Organization were the "sole and exclusive manager, rental agent and rehabilitation supervisor" of the Property prior to September 27, 2011. See Management Agreement, at Section 1.

30.     Among other things, the Management Agreement required Carroll Property, Hediger and/or Carroll Organization to "manage, operate, and maintain the Premises and carry out any rehabilitation activities in a commercially reasonable manner," and to "make or cause to be made all repairs, replacements, alterations, additions, improvements and decorations in and to the Premises as Manager may reasonably determine advisable…." See Management Agreement, at Section 3.

31.     Among other things, Carroll Property, Hediger, and/or Carroll Organization, by and through their authorized agents, employees and/or representatives, failed to properly secure certain portions of the Property, and certain buildings on the Property were improperly enclosed.

As a result of the failure by one or more of these Defendants to properly secure the Property, substantial quantities of copper piping were stolen from the Property.

32.     Subsequent to the theft of the copper piping described above, and as a result of the acts and failures to act by one or more of Defendants, and including but not limited to its failure to properly maintain and operate the Property to ensure that water services to certain vacant and otherwise inaccessible units on the Property were disconnected, significant amounts of water infiltrated multiple units on the Property, many of which were contaminated with mold and required abatement.

## COUNT I– NEGLIGENT MISREPRESENTATION

33.     Plaintiffs restate and incorporates paragraphs 1-32 as if set forth herein in full.

34.     Carroll Property, Hediger, and/or Carroll Organization, acting by and through their authorized agents, employees and representatives, including Jonathan Wogan and Arlene Elliott, were acting in the course of their business and duties as commercial property managers in connection with the management and sale of the Property.

35.     In the course of acting as commercial property managers, Carroll Property, Hediger, and/or Carroll Organization, by and through the aforesaid authorized agents, employees and representatives, negligently supplied information to Cohen that was false, misleading and otherwise incorrect, including but not limited to its representation(s) that no mold existed in any units of the Property which was made on or about January 27, 2011.

36.     Carroll Property, Hediger, and/or Carroll Organization, by and through the aforesaid authorized agents, employees and representatives, failed to exercise reasonable care or competence in providing the false, misleading and otherwise incorrect information set forth in the preceding paragraph to Cohen, or failed to exercise reasonable care or competence in

communicating such information to Cohen.

37.     Carroll Property, Hediger, and/or Carroll Organization, by and through the aforesaid authorized agents, employees and representatives, knew or should have known that the false, misleading and otherwise incorrect information would be relied upon by Cohen and by one or more of the entities with which he was affiliated, the other Plaintiffs, and through which he would be acting.

38.     Plaintiffs justifiably relied upon the false, misleading and otherwise incorrect information provided to Cohen and 21st Century by one or more of the Defendants as described in this Complaint and Count I.

39.     Plaintiffs have sustained damages as a result of its reliance on the false, misleading and otherwise incorrect information provided by Defendants in an amount to be proven at trial, but in no event less than the sum of $750,000.00

## COUNT II – BREACH OF CONTRACT

40.     Plaintiffs restate and incorporate paragraphs 1-39 as if set forth herein in full.

41.     Plaintiff Forest Creek is the assignee of the rights of MPI Coventry, LLC under the Management Agreement.

42.     Plaintiffs Lloyd's, Highland Creek and Barry Cohen are intended third-party beneficiaries of the Management Agreement.

43.     Carroll Property, Hediger, and/or Carroll Organization breached the Management Agreement as a result of, among other things, failing to manage, operate, maintain and prevent the deterioration of the Property in a commercially reasonable manner.

44.     As a direct and proximate result of the Defendants' material breaches of the Management Agreement, Plaintiffs sustained damages in an amount to be proven at trial, but in no event less than the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00).

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs Lloyd's Acceptance Corp., Barry Cohen, 21st Century Communities, Inc., Highland Creek Acquisition, LLC and Forest Creek Townhomes, LLC respectfully pray as follows:

1.      That service of process issue against all Defendants, requiring them to appear and answer this Complaint within the time required by law;

2.      That Plaintiffs be awarded a judgment against Defendants, jointly and severally, in an amount to be proven at trial, but in no event less than the sum of $750,000.00, pursuant to Counts I and II of this Complaint;

3.      That Plaintiffs be awarded interest on all such amounts, and attorney's fees if appropriate;

4.      That a jury be empaneled for the trial of this cause; and

5.      That Plaintiffs be awarded such further and general relief to which they may be entitled.

Respectfully submitted,

/s/ Adam M. Nahmias
Adam M. Nahmias (#16227)
Law Offices of Libby & Nahmias
150 Court Avenue
Memphis, Tennessee  38103
(901) 343-0777
adam@lnlawmemphis.com

/s/ Brian S. Faughnan
Brian S. Faughnan (#19379)
Lewis Thomason
40 South Main Street, 29th Floor
Memphis, TN  38103
(901) 525-8721
bfaughnan@LewisThomason.com

*Attorneys for Plaintiffs*

## ASSET MANAGEMENT AGREEMENT

THIS ASSET MANAGEMENT AGREEMENT (the "Agreement") made effective as of the 10th day of _July_, 2007, between MILES PROPERTIES, INC. a Georgia corporation (dba Miles Properties Manager, Inc. "Manager") and MPI COVENTRY VILLAGE, LLC, a Georgia limited liability company ("Owner").

### WITNESSETH

WHEREAS, Owner owns or will hereafter own the real property and improvements located at 1305 Turkey Run Lane, Memphis, Tennessee 38116, which property is improved with one or more multi-family apartment buildings consisting of 470 units, more or less, (the "Premises"), which Premises are presently known as the Coventry Village Apartments; and

WHEREAS, Manager is experienced in the business of managing multifamily apartment complexes such as the Premises; and

WHEREAS, Owner, and the principals of Owner, desire to appoint Manager to manage the Premises and, subject to the terms of this Agreement, Manager desires to accept such appointment;

NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained, Owner and Manager agree as follows:

1.  Owner hereby appoints Manager as the sole and exclusive manager, rental agent and rehabilitation supervisor of the Premises for the period commencing as of the effective date Owner acquires title to the Premises and continuing until terminated pursuant to the terms and conditions hereof.

2.  Manager hereby accepts such appointment and agrees to perform the duties, obligations and services described in this Agreement, including, without limitation, those specific duties, obligations and services described in this Section 2 and Section 3 below. All such services shall be performed in accordance with applicable laws, regulations, orders, rules and determinations of any federal, state or municipal authority.

(a)   Manager shall manage, operate and maintain the Premises and carry out any rehabilitation activities in a commercially reasonable manner. Manager shall act in a fiduciary capacity with respect to the proper protection of and accounting for Owner's assets. In this capacity, Manager shall deal at arms length with all third parties and Manager shall serve Owner's interests at all times. Manager shall use its commercially reasonable efforts in the management of the Premises and the rehabilitation thereof, including as applicable, collection of rents, any rehabilitation of the Premises, and any sale of units. In the event Owner notifies Manager that it desires to pursue a sale of the Premises, Manager shall use its commercially reasonable efforts to effect a sale on such terms and conditions as may be approved by Owner, including the retention of a reputable real estate brokerage firm if necessary, coordination of the potential buyer's due diligence investigation, scheduling and supervising property tours and other marketing activities, and



EXHIBIT
A

administration of the closing and sale proceeds transfer process through any escrow agent designated by Owner.

(b)   Should any claims, demands, suits or other legal proceedings be made or instituted by any person against Owner which arise out of any of the matters relating to this Agreement, Manager shall give Owner all pertinent information and reasonable assistance in the defense or other disposition thereof.

(c)   All services contracts shall include a provision for cancellation thereof by Manager upon not less than thirty (30) days written notice, but only to the extent same is customary for the type of service contract in question.

(d)   When Manager deems it appropriate, contracts for repairs, capital improvements, goods and services may be awarded on the basis of competitive bidding.

(e)   Manager shall maintain adequate and separate books and records for the Premises.

3.   Owner hereby authorizes Manager, and Manager hereby agrees, to perform the following in the name of, for the account of, and at the cost and expense of the Owner:

(a)   Execute, as applicable, all leases, renewals or extensions or agreements for the rental, occupancy, improvement or operation of said Premises, or any part thereof.

(b)   Collect all rents, as applicable, and other income from the Premises and when necessary, as directed by Owner, institute all legal actions or proceedings for the collection of rent or other amounts from said Premises, or the ousting or dispossession of tenants and other persons therefrom, and engage attorneys acceptable to Owner for any such matters.

(c)   Hire, promote, discharge and supervise employees as Manager may reasonably determine advisable to be employed in the care, management or operation of said Premises. It is understood and agreed that all such employees are in the employ of Manager; however, the costs for on-site employees, including wages, benefits, insurance and payroll taxes, shall be paid by Manager from the property revenues or otherwise as an additional charge to Owner for services hereunder.

(d)   Make or cause to be made all repairs, replacements, alterations, additions, improvements and decorations in and to the Premises as Manager may reasonably determine advisable, including all improvements or renovations consistent with the development or renovation plan prepared by Owner, if any.

(e)   Purchase or contract for the purchase of all supplies and materials as Manager may reasonably determine advisable for the Premises or the development thereof.

(f)   Make all contracts for construction, improvement, renovation, architecture, legal, accounting, surveying, insurance, planning, electricity, gas fuel, steam, water, telephone, widow cleaning, rubbish removal, laundry service, exterminating,

equipment maintenance, and other such services, or such of them as Manager shall reasonably deem advisable relative to the Premises, common areas or the development thereof.

(g)    Use commercially reasonable efforts to achieve the performance results for the Premises per the scope and budget provided by Owner.

4.    Manager shall render to Owner, on or before the 20th day of the following month, a monthly statement of receipts and disbursements for the preceding month. In addition:

(a)    Manager shall prepare and submit to Owner a proposed operating budget and a proposed capital budget for the promotion, operation, repair, improvement and maintenance of the Premises for the forthcoming calendar year. Each proposed budget shall be delivered to Owner no later than December 1 of each preceding calendar year. Manager shall be and is hereby expressly authorized to request draws from any ongoing reserve account(s) for the Premises established and maintained from time to time with any lenders.

(b)    During the calendar year, Manager shall inform Owner of any major increases in costs and expenses that were not foreseen during the budget preparation period. Manager shall use all reasonable efforts to procure that the aggregate amount of the operating budget and the capital budget for any year are not exceeded.

5.    (a)    All monies furnished by Owner as working funds and all monies received by Manager for or on behalf of Owner shall be deposited by Manager in a bank mutually approved by Owner and Manager in account(s) maintained by Manager for the benefit of Owner and not co-mingled with the other funds of Manager, and shall be disbursed by Manager in such amounts and at such times as the same are required to pay for obligations, liabilities, costs, expenses and fees (including, without limitation, the compensation of Manager as hereinafter provided) arising on account of or in connection with, and permitted by, this Agreement. All monies received by Manager for or on behalf of Owner shall be and remain the property of Owner; said account shall be a separate and exclusive account created for the Premises.

(b)    Owner shall be responsible for payment of all obligations, liabilities, costs, expenses and fees arising under the terms of this Agreement, which shall be paid by Owner if and when the cash flow from the Premises is not sufficient to cover such obligations.

(c)    Owner shall reimburse Manager promptly for any monies which Manager may elect to advance for the account of Owner to pay expenses or obligations in accordance with the terms of this Agreement. Nothing herein contained, however, shall be construed to obligate Manager to make any such advances.

(d)    Manager shall pay from such account(s) when due interest or amortization on mortgages, taxes or assessments and other appropriate charges and obligations relative to the Premises unless otherwise specifically directed by Owner.

6.    Manager is provided with such other general authority and powers as may be necessary or advisable to perform its obligations under this Agreement.

7.    Manager shall, at Owner's cost and expense, use its commercially reasonable efforts to promptly remedy any violation of any law, ordinance, rule, regulation or order relating to the Premises which comes to its attention.  Upon obtaining knowledge thereof, Manager shall promptly notify Owner. Upon obtaining knowledge thereof, Owner shall promptly notify Manager, of any violation, order, rule or determination of any federal, state or municipal authority affecting the Premises. Manager shall promptly remedy at its own cost and expense any violation of any law, ordinance, rule, regulation or order relating to Manager's performance of its obligations under this Agreement which comes to its attention.

8.    (a)    Except as otherwise excluded in this Section 8, Owner agrees to indemnify and hold and save Manager free and harmless from any and all damages or injuries to person or property, or claims, actions, obligations, liabilities, costs, expenses and fees relative to the Premises and Manager's operation thereof pursuant to this Agreement or to Manager's actions under the written directions of Owner, to the extent it complies with such directions.  The indemnity from Owner in favor of Manager contained in this Paragraph 8(a) shall not extend to loss, cost, expense or damage suffered or incurred by Manager to the extent it is as a consequence of Manager's negligence.  It is expressly agreed that the foregoing provision of this subparagraph shall survive the termination of this Agreement, but this shall not be construed to mean that Owner's liability does not survive as to other provisions of this Agreement. Manager shall indemnify and hold Owner and its members, owners and partners harmless from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses (except to the extent covered by insurance carried by Owner) sustained or incurred by or asserted against Owner or its members, owners and partners by reason of or arising out of Manager's breach of the duties and obligations required by this Agreement to be performed by it.  Nothing contained in this Agreement shall relieve Manager from responsibility to Owner for the negligence of Manager or for a breach by Manager of its obligations under this Agreement or any applicable law, subject to exceptions for claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses covered by insurance carried by Owner.

(b)    Manager shall not be liable to Owner for any good faith error in judgment, nor for any good faith act or omission in the performance of this Agreement to the extent (i) this arises in respect of services relating to the normal operation of the Premises, and (ii) is in an amount which, when aggregated with any other such loss, cost or expense suffered or incurred by the Owner in any calendar year as a result of any such good faith error in judgment or good faith act or omission, is less than four percent (4%) of the gross rental income for such premises in that calendar year.   In the event the aggregate amount of such loss, cost or expense exceeds four percent (4%) of such rental amount in any calendar year, and Manager would otherwise be liable hereunder for such amount, Manager shall be liable only for the amount of such excess and then only to the extent such excess is not covered by insurance carried by Owner.

(c)   Owner agrees to procure and maintain during the term of this Agreement comprehensive general public liability insurance, including appropriate property damage insurance, elevator liability insurance, steam boiler insurance, workman's compensation insurance, and such other insurance as may be advisable for the protection of Owner and Manager or as required from time to time by Owner's lender(s). In each such policy of liability insurance, Owner agrees, upon request of Manager, to designate Manager and its officers and employees as additional insureds. The insurance carrier and the amount of coverage in each such policy shall be mutually agreed upon by Owner and Manager. A certificate of each such policy issued by the carrier shall be delivered to Manager, and shall provide that Manager shall receive at least thirty (30) days prior written notice from the carrier in the event of cancellation or any material change therein. All dividends or return premiums in connection with such insurance shall be paid to the Owner. Manager shall (i) notify the insurance carrier within twenty-four (24) hours after Manager receives notice of any loss, damage, or injury to persons or property, and (ii) agree that Owner shall have the exclusive right, at its option, to conduct the defense to any claim, demand or suit. Manager shall not do or omit to do anything which would result in the vitiation of any policy of insurance referred to in this Paragraph.

(d)   To the extent permitted by its insurance policies, Owner hereby waives and releases any and all claims which it may have against Manager for damages to said Premises or contents therein to the extent that such damage is covered by Owner's insurance policies.

(e)   If the Owner requires a fidelity bond on employees of Owner or the Manager for handling project funds, the Owner shall bear the costs of such bonds provided such costs do not exceed the amount ordinarily paid for similar bonds in the area.

9.   Owner agrees, at Owner's expense, to provide, equip and maintain a suitable office in said Premises for the use of Manager in the discharge of Manager's duties under this Agreement.

10.   Owner hereby grants Manager the privilege of displaying Manager's signs in and upon said Premises announcing that said Premises is under Manager's management.

11.   Owner agrees to pay Manager for the services performed by Manager under this Agreement:

(a)   Base compensation for its regular day-to-day management activities performed for Owner hereunder in the amount of five percent (5.00%) of all gross rental revenues (and ancillary income) generated by the Premises, payable monthly.

(b)   An acquisition fee in an amount equal to one and one-half percent (1.5%) of the gross purchase price of the Premises, payable on the consummation of Owner's acquisition of the Premises, whether directly or indirectly (including without limitation, Owner's acquisition of interests in an entity holding the Premises or foreclosure on debt secured by the Premises).

(c)   A disposition fee in an amount equal to one and three-quarters percent (1.75%) of the gross sales price (including liability assumption) of the Premises. Disposition fees shall be payable on the consummation of Owner's sale or other disposition of the Premises, whether directly or indirectly (including without limitation, any sale of all or substantially all of the interests in Owner).

(d)   Any reasonable direct costs or travel expenses to the Premises and all on-site personnel, properly and necessarily incurred, including without limitation, a rental property manager, administrative support for the Premises office, maintenance, grounds, etc., all as determined in the discretion of Manager, shall be billed directly to Owner and not part of the fees provided herein.

(e)   Manager will also bill Owner for its pro rata share on a per unit basis of Manager's off-site administrative and management expenses and overhead (collectively, the "Pass Through Expenses").

By way of example only, and to illustrate the parties' intent with respect to the Pass Through Expenses, Manager may bill Owner for the cost of certain expenses for services rendered to the Premises based on Manager's total actual cost of providing services to the Premises and other properties managed by Manager. For example, assuming Manager employs six (6) roaming property supervisors (i.e., District Managers) who render services directly benefiting the Premises and other properties managed by Manager which, together with Manager's other off-site administrative and management expenses and overhead, total $2,500,000.00 annually (this is an example only, and not intended to illustrate what current, actual "pass-through" expenses are); and further assuming Manager manages a total of 15,000 apartment units, including the units located at the Premises, then Manager may charge owner for the pro-rata (i.e., 470/15,000) cost of such services. Such calculations of the pro-rata charges to Owner for such services shall be made on a fair and reasonable basis, accounting for any fluctuations in the actual number of apartment units managed by Manager and changes in Manager's actual cost of rendering such services.

(f)   If significant rehabilitation of the Premises is required beyond routine maintenance or there is a casualty loss to the Premises requiring reconstruction of the Premises, the Manager will be entitled to an additional fee as a percentage of the total completed work for supervising and expediting all required improvements and rehabilitation, in an amount equal to eight percent (8.0%) of the cost of the work.

(g)   If Manager is called upon to perform other services not customarily a part of normal, day-to-day operating activities routinely performed by a managing agent, it is agreed that Manager shall receive additional compensation therefore in an amount to be agreed upon between the parties in advance of such services being performed. If Owner undertakes the conversion of all or any portion of the Premises into condominiums, Manager or an affiliate designated by Manager, shall be entitled to receive a supervision/conversion fee in an amount determined by Manager in its sole

and absolute discretion, but in no event less than four percent (4%) of the total project costs of such conversion.

(h)   Any and all fees payable to Manager hereunder may be deferred and accrued as and for so long as Manager may determine in its sole and absolute discretion.

12.   All inquiries and negotiations for any leases, renewals, extensions, continuations of tenancy, or agreements for the rental, occupancy, operation, construction, improvement or maintenance of said Premises, or the sales of the Premises or any part thereof, shall be conducted solely by or under the direction of Manager.

13.   All notices to be given hereunder shall be in writing and shall be sent by United States certified mail, return receipt requested, postage prepaid, addressed to recipient as follows:

<u>If to Manager</u>:              **Miles Properties, Inc.**
                            **3500 Lenox Road**
                            **Suite 800**
                            **Atlanta, Georgia 30326**
                            **Attn: Daniel J. Miles, President**

<u>If to Owner</u>:              **MPI Coventry Village, LLC**
                            **3500 Lenox Road**
                            **Suite 800**
                            **Atlanta, Georgia 30326**
                            **Attn: Manager**

or to such other addresses as may from time to time be given as provided in this Paragraph 13.   Any notice mailed as herein provided shall be deemed and treated to have been received on the date of mailing.

14.   Manager is not and never shall be liable to any creditor of Owner or to any claimant against the property of Owner.   Nothing contained in this Agreement shall constitute or be construed to be or create a partnership or joint venture between Owner and Manager.   Subject to the provisions of Section 15 hereof, this Agreement shall be binding upon the parties thereto, their heirs, legal representatives, successors and assigns, and may not be changed orally but only by a writing signed by both parties hereto.

15.     Neither party hereto shall have the right to assign all or any portion of its rights or duties under this Agreement without the prior written approval of the other party, such approval not to be unreasonably withheld, conditioned or delayed; provided, that (i) Owner may assign this Agreement and its rights hereunder as additional collateral or security to any lender with a first priority security interest in the Premises without the consent of the Manager, and Manager agrees to execute and deliver on a timely basis any and all customary acknowledgments and subordination agreements reasonably requested by such lender; and (ii) Manager shall have the right to assign its rights and obligations hereunder without Owner's consent to any entity under common control with Manager, provided that Manager shall remain fully and primarily liable for any such obligation so assumed by such assignee and will indemnify and hold Owner harmless for any breach of this Agreement by such

assignee.

16. (a)    The term "Event of Default" shall mean the following:

(i)    The failure of Manager to comply with any provision of this Agreement if such failure is not cured within thirty (30) days after the effective date of a notice thereof from Owner (provided, however, with respect to any matter not curable by the payment of money if such matter is curable but curing such failure reasonably requires more than thirty (30) days, the time period for curing shall be extended for up to a total of sixty (60) days so long as Manager promptly commenced to cure the failure after the effective date of the notice and thereafter diligently prosecutes such cure).

(ii)    (A) the making by Manager of an assignment for the benefit of creditors; (B) the appointment on behalf of Manager of a receiver, liquidator or trustee of its property; (C) the dissolution or termination of the corporate existence of Manager by merger, consolidation or otherwise; (D) or the filing by or against Manager of a petition for the bankruptcy, reorganization or arrangement of such party; provided, however, in respect of (D) above, that if the petition was filed against Manager, Manager shall have ninety (90) days from the date of filing within which to have the petition discharged or dismissed.

(b)    Owner shall have the right to terminate this Agreement (i) upon the occurrence of an Event of Default by Manager, or (ii) upon a sale or other disposition of the Premises, or (iii) at any time upon ninety (90) days' prior notice to Manager. Owner shall give to Manager notice of any such termination specifying the effective date thereof. In the event of the termination of this Agreement, the compensation of Manager will be prorated to the effective date of such termination and paid after deducting therefrom any outstanding amounts that may be payable to Owner hereunder; provided, that (x) any and all deferred management fees, deferred acquisition fees, deferred supervision, development fees and the disposition fee (if termination occurs on sale or other disposition of the Premises) shall be due and payable immediately upon termination, and (y) if termination occurs no more than sixty (60) days prior to the consummation of the sale or other disposition of the Premises, but after a definitive agreement for the sale or other disposition of the Premises has been executed by Owner and the transferee (or the transferee's predecessor-in-interest), the disposition fee shall be payable immediately upon consummation of such sale or other disposition. Manager shall have the right to terminate this Agreement at any time upon ninety (90) days' prior notice to Owner; provided, that Manager shall not have the right to terminate this Agreement if and to the extent such termination would result in a default under any loan collateralized by a security interest in the Premises.

(c)    On the effective date of a termination or expiration of this Agreement, Manager shall deliver to Owner promptly, any and all of Owner's funds held by Manager with respect to the Premises. Manager shall also deliver to Owner any funds received by Manager after the date of termination or expiration which relate to the operation of

the Premises after deducting therefrom any outstanding amounts that may be due and payable to Manager hereunder. All materials, supplies, keys, leases, contracts, other documents, insurance policies, plans, specification, permits, licenses, promotional materials and such other accounting papers and records (including general correspondence) as pertain to this Agreement and the performance of Manager's duties hereunder shall be delivered to Owner upon or within a reasonable period of time after the effective date of a termination or expiration. Manager shall also assign to Owner (or to such person as Owner may designate in writing) executed contracts, if any, in Manager's name relating to the operation and maintenance of the Premises. Manager shall deliver to Owner a final accounting (prepared in accordance with the provisions of this Agreement) of the Premises up to and including the effective date of the termination or expiration within ninety (90) days after such effective date of termination or expiration. No further services shall be performed by Manager under this Agreement after the effective date of a termination or expiration, except that Manager shall cooperate reasonably with Owner to accomplish an orderly transfer of the operation and management of the Premises to the entity designated by Owner in a notice to Manager.

(d)   If Owner terminates this Agreement pursuant to an Event of Default, Owner may exercise any and all remedies available at law or in equity for breach of contract. Upon the expiration or any termination both parties shall remain liable for all obligations accrued and not fully performed under this Agreement during the term hereof and such obligations and any liabilities set forth herein shall survive any termination or expiration of this Agreement.

17. (a)   This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof. There are no further agreements or understandings, written or oral, in effect between the parties with respect to the subject matter hereof.

(b)   The failure of either party to insist upon the strict performance of any covenant, agreement, provision, or condition of this Agreement shall not constitute a waiver thereof.

(c)   This Agreement may be executed in separate counterparts. It shall be deemed fully executed when each party has signed at least one counterpart, even though no single counterpart contains the signature of all the parties.

(d)   All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural; and the plural shall include the singular. Titles of articles and sections in this Agreement are for convenience only and neither limit nor amplify the provisions of this Agreement. This Agreement shall not be interpreted in favor of either party by virtue of said party not having prepared this Agreement.

(e)   This Agreement shall be governed by the laws of the State of Georgia.

(f)   The parties agree to execute such other documents and perform such other actions as may be necessary or desirable to carry out the purposes of this Agreement.

(g)   No other person or entity other than Owner and Manager is or shall be entitled to bring any action to enforce any provision of this Agreement.  The provisions of this Agreement are solely for the benefit of and shall be enforceable only by the Owner and Manager and their respective successors and assigns as permitted hereunder.

(h)   The rights and remedies of Owner and Manager under this Agreement shall not be mutually exclusive.  The exercise of one or more of the rights and remedies under this Agreement shall not preclude the exercise of any other right or remedy or claim for monetary damages.  Monetary damages may not be an adequate remedy for a breach or threatened breach of this Agreement, and in the event of a breach or threatened breach of any provision hereof, the respective rights and obligations hereunder shall be enforceable by specific performance, injunction or other equitable remedy.

*[Signatures Appear on Following Page]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

"MANAGER"

MILES PROPERTIES, INC.

By: _____
Name: _Daniel T Miles_
Title: _President_

"OWNER"

MPI COVENTRY VILLAGE, LLC
By: MPI Coventry Village Manager, LLC
Its: Manager

By: _____
Name: _Daniel J Miles_
Title: _President_

# 21st Century Communities, Inc.

January 30, 2011

Tommy Bronson III
CB Richard Ellis
5855 Ridge Bend Road
Memphis, TN 38120

>        Re: Highland Creek Apartments
>            1305 Turkey Run Lane
>            Memphis, TN 38116

Dear Tommy,

In accordance with today's email, enclosed is our revised offer to purchase the above referenced property.

The mold abatement information provided by Jonathan Wogan and Arlene Elliott, the management company's personnel, during my January 27th visit, was critical in my decision to proceed further with purchasing the subject property. Due to the potential liability, it is not my practice to acquire properties containing mold. I was glad to hear from Mr. Wogan and Ms. Elliott that there was no mold in any of the apartment units and was able to view those units, identified by them of having been flooded by the overflowing creek, where the wet drywall with mold was removed.

Please keep me posted on the status of the enclosed offer. Thank you.

Very truly yours,

Barry Cohen
President

Enclosure



EXHIBIT

B

7065 W. Ann Rd., Ste. 130-603 • Las Vegas, NV 89130
Telephone (702) 872-7056 • Facsimile (702) 872-0027

## QUITCLAIM ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS QUITCLAIM ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assignment") is made as of the _____ day of September, 2011, by MPI Coventry Village, LLC, a Georgia limited liability company ("Assignor") in favor of Highland Creek Acquisition, LLC, a Tennessee limited liability company ("Assignee").

WHEREAS, Assignee is this day purchasing from Assignor and Assignor is conveying to Assignee the real property and improvements located at 1305 Turkey Run Lane, Memphis, Tennessee (the "Property") pursuant to Agreement of Purchase and Sale for Highland Creek Apartments by and between Assignor and Assignee, dated as of the date hereof (the "Purchase Agreement", defined terms used but not defined herein shall have the meaning set forth in the Purchase Agreement); and

WHEREAS, Assignor desires to assign, transfer, set over and deliver to Assignee, subject to the terms and conditions of the Purchase Agreement, all of Assignor's right, title and interest (if any) in and to all Intangibles, Documents, Permits, Tenant Contracts, Warranties, Service Contracts and Personal Property Leases (collectively, the "Assigned Property"), to the extent the same are assignable;

NOW, THEREFORE, in consideration of the sum of Ten Dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions of the Purchase Agreement, Assignor hereby unconditionally sells, transfers, conveys, assigns and sets over unto Assignee, all of Assignor's right, title and interest (if any) in and to the Assigned Property.

Except as otherwise set forth in the Purchase Agreement, this Assignment is made without recourse, "AS IS," "WHERE IS" and without representation or warranty, express or implied (including, without limitation, any warranty of title), and the Assignor hereby disclaims all representations and warranties that would otherwise be implied into this Assignment under any applicable law.

In consideration of the foregoing assignment, Assignee, to the extent set forth in the Purchase Agreement, hereby accepts this assignment and hereby assumes, and agrees to perform and comply with all the covenants, conditions, agreements, and obligations of Assignor under the Assigned Property arising from and after the date hereof. Assignee hereby acknowledges receipt of all security deposits collected from tenants as listed on the certified rent roll dated September 19, 2011, and specifically assumes the obligations of landlord with respect to such security deposits, in accordance with the Tenant Contracts and with applicable law, and further agrees to indemnify, defend and hold harmless Assignor, and its agents, representatives and employees against and from any and all claims, liabilities, losses, damages and expenses, including reasonable attorneys' fees and expenses, with respect to the security deposits listed in the certified rent roll dated September 19, 2011 and transferred to Assignee by Assignor.

The parties hereto covenant and agree to execute and deliver to each other any and all documents and to perform any and all acts necessary or appropriate to further effectuate the assignment and assumption described herein.

3920707-1

EXHIBIT

C

IN WITNESS WHEREOF, Assignor and Assignee have caused this Assignment to be duly executed as of the day and year first written above.

ASSIGNOR:

MPI COVENTRY VILLAGE, LLC, a Georgia limited liability company

By: MPI Coventry Village Manager, LLC, a Georgia limited liability company, its manager

By: _____

Ronald L. Glass, Chief Restructuring Officer

ASSIGNEE:

HIGHLAND CREEK ACQUISITION, LLC, a Tennessee limited liability company

By:_____
Name:
Title:

Signature Page to Assignment and Assumption

IN WITNESS WHEREOF, Assignor and Assignee have caused this Assignment to be duly executed as of the day and year first written above.

ASSIGNOR:

MPI COVENTRY VILLAGE, LLC, a Georgia limited liability company

By: MPI Coventry Village Manager, LLC, a Georgia limited liability company, its manager

By: _____
    Ronald L. Glass, Chief Restructuring Officer

ASSIGNEE:

HIGHLAND CREEK ACQUISITION, LLC, a Tennessee limited liability company

By: _____
Name: Sherri A. Pellegren
Title: Sole member

## ASSIGNMENT OF MEMORANDUM OF BID

THIS ASSIGNMENT OF MEMORANDUM OF BID ("Assignment") is made as of the 25ᵗʰ day of November, 2011, by Lloyd's Acceptance Corp., a Nevada corporation, ("Assignor"), to Forest Creek Townhomes, L.L.C., a Tennessee limited liability company, ("Assignee").

## WITNESSETH:

WHEREAS, Assignor was the successful bidder with a bid of One Million Two Hundred Fifty Thousand and No/100 Dollars ($1,250,000.00) (the "Bid") at the foreclosure sale on November 16, 2011, of that certain real property and improvements known as 1305 Turkey Run Lane, Memphis, Shelby County, Tennessee, together with certain personal property, all as more fully described in that certain Deed Of Trust, Security Agreement And Financing Statement recorded as Instrument No. 07112689 in the Register's Office of Shelby County, Tennessee, as assigned by Assignment And Assumption Of Deed Of Trust, Security Agreement And Financing Statement And Other Loan Documents recorded as Instrument No. 07112692 in said Register's Office, as amended by First Amendment To Deed Of Trust And Other Loan Documents recorded as Instrument No. 08158652 in said Register's Office, as further amended by Second Amendment To Deed Of Trust And Other Loan Documents recorded as Instrument No. 11095178 in said Register's Office and as further assigned by Assignment And Assumption Of Deed Of Trust, Security Agreement And Financing Statement, And Other Loan Documents recorded as Instrument No. 11095179 in said Register's Office (collectively the "Deed of Trust");

WHEREAS, Assignor executed a Memorandum Of Bid dated as of November 16, 2011 (the "Memorandum Of Bid") to evidence the Bid and its agreement to acquire the property described in the Deed of Trust; and

WHEREAS, Assignor wishes to assign the Memorandum Of Bid and Assignor's right to acquire the Property described therein to Assignee.

NOW, THEREFORE, for and in consideration of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, Assignor hereby assigns to Assignee the Memorandum Of Bid and all of Assignor's right and obligation to acquire the said real property, improvements and personal property pursuant to the Memorandum Of Bid. By its acceptance of delivery of this Assignment, Assignee accepts such assignment and assumes all obligations with respect to the Memorandum Of Bid.

[SIGNATURE ON FOLLOWING PAGE]



EXHIBIT
D

4834-0600-3982, v. 1

IN WITNESS WHEREOF, Assignor has executed and sealed this Assignment as of the date first above written.

ASSIGNOR:

Lloyd's Acceptance Corp.,
a Nevada corporation

By: _____

Barry Cohen

Title: President


ASSIGNEE:

Forest Creek Townhomes, L.L.C.,
a Tennessee limited liability company

By: _____

Warren H. Ashmann

Title: Sole Member

4834-0600-3982, v. 1

ABSOLUTE ASSIGNMENT

THIS ABSOLUTE ASSIGNMENT (the "Assignment") is made as of the 7th day of May, 2014, by Highland Creek Acquisition, LLC, a Tennessee limited liability company ("Acquisitions") and Lloyd's Acceptance Corp., a Nevada corporation ("Lloyd's" and, together with Acquisitions "Assignor"), and Forest Creek Townhomes, L.L.C., a Tennessee limited liability company ("Assignee").

WITNESSETH:

WHEREAS, on or about July 16, 2007, MPI Coventry Village, LLC, a Georgia limited liability company ("Grantor"), executed a Deed Of Trust, Security Agreement And Financing Statement (the "Deed Of Trust") to Carla Peacher-Ryan ("Trustee") for the benefit of Legg Mason Real Estate Capital II, Inc., a Delaware corporation ("Beneficiary"), which Deed Of Trust was recorded on July 20, 2007 as Instrument Number 07112689 in the Register's Office of Shelby County, Tennessee;

WHEREAS, the Deed Of Trust was assigned by Beneficiary to Legg Real Estate CDO II, Corp., a Delaware corporation, pursuant to that Assignment And Assumption Of Deed Of Trust, Security Agreement And Financing Statement And Other Loan Documents dated as of July 19, 2007, and recorded as Instrument Number 07112692 in said Register's Office (the "First Assignment");

WHEREAS, the Deed Of Trust, as assigned by the First Assignment, was amended by that First Amendment To Deed Of Trust And Other Loan Documents dated December 5, 2008, recorded on December 16, 2008 as Instrument Number 08158652 in said Register's Office (the "First Amendment"), and was further amended by that Second Amendment To Deed Of Trust And Other Loan Documents dated as of September 27, 2011 and recorded on September 28, 2011 as Instrument Number 11095178 in said Register's Office (the "Second Amendment"), pursuant to which the promissory note secured by the Deed of Trust was split into (i) Promissory Note (A) in the principal amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) (the "Note") and (ii) Promissory Note (B) in the principal amount of Ten Million Six Hundred Ninety Thousand Dollars ($10,690,000.00) ("Note B").   (References hereinafter made to the "Deed of Trust" shall mean the Deed of Trust as assigned by the First Assignment and as amended by the first Amendment and the Second Amendment);

WHEREAS, as provided in the Second Amendment, the Deed of Trust secured the Note, but no longer secured Note B;

WHEREAS, pursuant to that certain Agreement Of Purchase and Sale For Highland Creek Apartments, Acquisitions purchased Highland Creek Apartments (the "Property") from Grantor subject to the Deed of Trust;

WHEREAS, contemporaneously therewith, the Deed Of Trust was further assigned to Lloyd's by Assignment And Assumption Of Deed Of Trust, Security Agreement And Financing Statement, And Other Loan Documents, dated as of September 27, 2011, and recorded on September 28, 2011 as Instrument Number 11095179 in said Register's Office (the "Second


EXHIBIT
E

4844-0994-3323, v. 2

Assignment"). (References hereinafter made to the "Deed Of Trust" shall include the Deed Of Trust, the First Amendment, the Second Amendment, the First Assignment, the Second Assignment, and any and all other amendments to the foregoing);

WHEREAS, the security interest in certain personal property and other collateral, including the Assigned Property, created by and described in the Deed Of Trust was perfected by a UCC-1 Financing Statement recorded as Document No. 0602007-09853, as assigned at Document Nos. 0602011-06519 and 0602011-08475, as amended at 0602011-06518 (collectively, the "Financing Statement"), all in the Office of the Clerk of the Superior Court of Fulton County, Georgia, and to which reference is hereby made for a more particular description of such personal property;

WHEREAS, default was made in the payment of the debt and obligations secured by the Deed Of Trust and the Financing Statement, and R. Hunter Humphreys, as Lloyd's representative, was requested by Lloyd's, the holder and owner of the debt secured by the Deed Of Trust and the Financing Statements, to advertise and sell the real property, improvements and fixtures described in the Deed Of Trust, together with certain personal property described in the Substitute Trustee's Sale Notice And Notice of Sale Of Personal Property (the "Personal Property");

WHEREAS, R. Hunter Humphreys, as representative for Lloyd's, the secured party, conducted a real property foreclosure and UCC sale on November 16, 2011, (the "Foreclosure Sale"), and the highest and best bid for the Property, improvements and fixtures described in the Deed Of Trust, together with the Personal Property, was made by Lloyd's;

WHEREAS, by Assignment Of Memorandum Of Bid dated as of November 16, 2011, Lloyd's assigned its interest in the above-referenced high bid to Assignee, and the Property and the Personal Property were conveyed to Assignee;

WHEREAS, the proceeds from the Foreclosure Sale were not adequate to satisfy all amounts owed under the Note and Assignee may assert a claim against Assignor for the deficiency and may retain a security interest in portions of the personal property described in the Financing Statement which were not sold in the Foreclosure Sale.

NOW, THEREFORE, in consideration for release by Assignor of Assignee from all claims for deficiencies, debts, and obligations relating to the Note, the Deed of Trust and the Financing Statement, the mutual covenants, conditions, and agreements hereinafter set forth, ten dollars ($10.00) cash in hand paid and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

1.    Assignor hereby absolutely and unconditionally transfers, conveys, and assigns unto Assignee all of Assignors right, title and interest in and to all personal property owned by either of the Assignee parties and related to the Property including, without limitation, all contract rights, licenses, permits and warranties.

4844-0994-3323, v. 2

2.      Assignee hereby releases Assignor from any and all claims for deficiency under the Note and Deed of Trust and for all other claims or causes of action arising out of or related to the Property or the Foreclosure Sale.

3.      Assignee, by entering in this Assignment, does hereby accept the assignments described herein.

4.      This Assignment shall be interpreted and enforced according to the laws of the State of Tennessee.

5.      This Assignment may be executed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same agreement.

**IN WITNESS WHEREOF,** the parties hereto have caused this Assignment to be executed as of the day and year first above written.

**ASSIGNOR:**

**Highland Creek Acquisition, LLC**
a Tennessee limited liability company

By: _____
        Sherri A. Pellegren, President

**Lloyd's Acceptance Corp.,**
a Nevada corporation

By:    _____
Name:  _____
Title: _____

**ASSIGNEE:**

**Forest Creek Townhomes, L.L.C.,**
a Tennessee limited liability company

By:    _____
        Warren H. Ashmann, Sole Member

2.      Assignee hereby releases Assignor from any and all claims for deficiency under the Note and Deed of Trust and for all other claims or causes of action arising out of or related to the Property or the Foreclosure Sale.

3.      Assignee, by entering in this Assignment, does hereby accept the assignments described herein.

4.      This Assignment shall be interpreted and enforced according to the laws of the State of Tennessee.

5.      This Assignment may be executed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same agreement.

**IN WITNESS WHEREOF,** the parties hereto have caused this Assignment to be executed as of the day and year first above written.

**ASSIGNOR:**

**Highland Creek Acquisition, LLC**
a Tennessee limited liability company

By:     _____
        Sherri A. Pellegren, President

**Lloyd's Acceptance Corp.,**
a Nevada corporation

By:     _____
Name:   _____
Title:  _____

**ASSIGNEE:**

**Forest Creek Townhomes, L.L.C.,**
a Tennessee limited liability company

By:     _____
        Warren H. Ashmann, Sole Member

4844-0994-3323, v. 2

2.      Assignee hereby releases Assignor from any and all claims for deficiency under the Note and Deed of Trust and for all other claims or causes of action arising out of or related to the Property or the Foreclosure Sale.

3.      Assignee, by entering in this Assignment, does hereby accept the assignments described herein.

4.      This Assignment shall be interpreted and enforced according to the laws of the State of Tennessee.

5.      This Assignment may be executed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same agreement.

**IN WITNESS WHEREOF,** the parties hereto have caused this Assignment to be executed as of the day and year first above written.

**ASSIGNOR:**

**Highland Creek Acquisition, LLC**
a Tennessee limited liability company

By:      _____
          Sherri A. Pellegren, President

**Lloyd's Acceptance Corp.,**
a Nevada corporation

By:      _____
Name:  _____
Title:   _____

**ASSIGNEE:**

**Forest Creek Townhomes, L.L.C.,**
a Tennessee limited liability company

By:      _____
          Warren H. Ashmann, Sole Member